Ernest GEORGE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

93–SC–550–MR.

Supreme Court of Kentucky.

Oct. 27, 1994.

Thomas L. Conn, Lexington, for appellant.

Chris Gorman, Atty. Gen., E.M. Lowery, Asst. Atty. Gen., Criminal Appellate Div., Office of the Atty. Gen., Frankfort, for appellee.

REYNOLDS, Justice.

This case requires a decision as to whether KRS 421.350 prohibits a child witness, not a child victim, in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by closed circuit television.

Ernest George was convicted of first-degree rape and sentenced to 27 years' imprisonment. A matter of right appeal follows.

Two half-sisters, L.E., age eight, and A.E., age eleven, are the issue of the same mother, who was incarcerated after a conviction for manslaughter. The girls resided in the home of appellant's mother and they shared the same bedroom. A.E.'s father is the appellant herein.

L.E., the eight-year-old victim, testified in person before the court, while the trial court permitted appellant's twelve-year-old daughter, a nonvictim witness, to testify outside appellant's presence.

The Commonwealth sought to produce A.E.'s testimony outside the defendant's presence and the child's outpatient therapist, Dorothy Keller, a psychiatric nurse with a degree in social work, was called to testify. She stated that A.E. could testify in her father's presence, but that she would be more traumatized than the average child by doing so. She also advised that her main concern was the future of the "family dynamics," i.e., how the family would relate to one another after A.E. testified.

■ KRS 421.350 permits use of television cameras to present testimony in a sexual abuse case of a *victim* under the age of twelve so that the child need not be aware of the defendant's presence. The statute specifically states that such procedure "applies only to the statements or testimony of that child," i.e., the alleged *victim.* We have held "[t]he sections of the statute apply only to a narrow class of witnesses, children twelve years old or younger who are *victims* of sex

offenses. [Emphasis added.]" *Commonwealth v. Willis,* Ky., 716 S.W.2d 224 (1986).

■ The trial court committed reversible error and abused its discretion by improperly applying KRS 421.350(3) so as to allow child witness, A.E., to testify via closed circuit television, as she is not a child victim as provided for in this statute.

■ Said otherwise, KRS 421.350(3), which authorizes the use of video taped testimony from a child victim, does not apply to a witness. The Commonwealth seeks a statutory extension, i.e., transformation of a child victim witness into a child nonvictim witness. We simply hold that a statute should not go beyond its text. The statutory language is plain and, certainly, exceptions that have not been made cannot be read as such. We have held that the expression of one thing excludes another. *Smith v. Wedding,* Ky., 303 S.W.2d 322 (1957); *Fayette County Farm Bureau v. Martin,* Ky.App., 758 S.W.2d 713 (1988).

■ Although this Court has held in *Willis, supra,* that KRS 421.350(3) and (4) are not unconstitutional, it is of primary import that an accused's constitutional rights remain preeminent. *Willis, supra,* at 232 (Leibson, J., concurring). Impairment of these rights, for however an appealing reason, fails to provide justification for the impairment. Sensibilities of the witness and the protection of minor victims of sex crimes from further trauma are of societal concern, but the primary consideration remains whether the testimony can or cannot be otherwise truthfully obtained. *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The Maryland statute at issue in the case aforesaid was specifically intended to safeguard the physical and psychological well-being of a *child victim.*

■ Were the statute worded and intended to apply to A.E., the state has made an inadequate showing of necessity so as to utilize the statutory video tape procedure. The sole testimony at the hearing on the Commonwealth's motion consisted of Ms. Keller, whose expert status was not challenged on qualifications. She related that while the child expressed anxiety and dread,

she was not fearful and could testify in open court. It is apparent that the trial court failed to use the standard of a "compelling need" which is necessary to use TV testimony as the alternative to obtaining truthful testimony from the child. The Kentucky statute does not provide a blanket process for taking the testimony of every child witness by TV simply because testifying may be stressful.

Also at issue is whether the court committed reversible error by allowing a juror related to the victim to sit on the jury. A reference to the facts will assist in the visualization of the issue.

During a break in the trial, a male juror approached the bench and informed the court that he had just realized, during L.E.'s testimony when she mentioned her mother's name, that he was the victim's third cousin. In response to the court's questioning, he stated that he could be fair and impartial and the relationship would not affect his judgment. The juror concluded that he just wanted to make the court aware of his familial relationship with the victim. Neither counsel chose to ask this juror any questions and both appeared to have acquiesced in the court's action allowing such juror to remain on the jury.

During the same break, another juror approached the bench and informed the court that she had been approached by the victim's grandmother in the corridor and realized that they were related, their grandmothers being sisters. In response to the court's questioning, she related that such information would affect her ability to sit on the jury and be fair. The court excused her as the alternate, with apparent agreement by both counsel. The following day, appellant moved for a mistrial on the grounds that he was entitled to twelve fair and impartial jurors. The motion was denied.

■ There was no evidence herein of a close relationship or a relationship certain, either by affinity or acquaintance, to create a presumption of prejudice. *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1991). The familial relationship was tenuous as evidenced by the juror not being initially aware of a relationship. "The definition of what constitutes a 'close relationship' requiring a juror to be dismissed for cause is not clear. Ordinarily it is within the discretion of the trial court as to whether to excuse a first-cousin by affinity." *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988).

Similar and distinguishable cases include *Marsch v. Commonwealth*, Ky., 743 S.W.2d 830 (1987), a case where prospective jurors' spouses were second and third cousins of a victim. Another case concerning the relationship issue is *Thomas v. Commonwealth*, Ky., 864 S.W.2d 252 (1993), wherein we held that a juror should have been stricken for cause when it was revealed that his wife was first cousin to the prosecutor. Such case is not controlling here, as a close familial relationship of first cousin is not present, but, rather, that of third cousins.

From the record it is fairly disclosed that at the time of being accepted, the juror about whom appellant now complains was not of such a relation as to be prejudicial. It further appears that such relationship had never been recognized or known by him at the time of jury acceptance. *Templin v. Cornelius*, 243 Ky. 719, 49 S.W.2d 550 (1932).

Appellant's counsel did not question either of the jurors who ultimately realized some relationship to the subject of the case, nor did they object at the time of the jurors' disclosure. There has been no showing of an abuse of discretion by the trial court's failure to strike the juror who was the victim's third cousin and who acknowledged his ability to demonstrate fairness and impartiality. In this case, both waiver and lack of prejudice accentuate the correctness of the trial court's ruling upon this juror's qualification.

The judgment of Fayette Circuit Court is reversed and the case is remanded for a new trial consistent with the opinion.

STEPHENS, C.J., concurs.

LEIBSON, J., concurs by separate opinion in which STEPHENS, C.J., and STUMBO, J., join.

LAMBERT, J., dissents by separate opinion in which SPAIN and WINTERSHEIMER, JJ., join.

WINTERSHEIMER, J., dissents by separate opinion in which SPAIN, J., joins.

LEIBSON, Justice, concurring.

Respectfully, I concur separately, for the following reasons.

I agree that the verbiage in KRS 421.350(3) does not, as such, authorize the use of videotape as a method for providing testimony from a witness other than a child victim. However, the critical question is not one of legislative intent. It is whether the court can and should judicially modify the methods available for presenting evidence to accommodate this new method consistent with the confrontation clause in the U.S. Constitution, Sixth Amendment, and the "right ... to meet the witnesses face-to-face" in Section 11 of the Kentucky Constitution.

Under separation of powers doctrine, if the new method is acceptable, it is not up to the legislature to say whether it can be used. It falls without our responsibility for the exercise of judicial power. *See* Kentucky Constitution, Sections 27 and 28; *Drumm v. Commonwealth,* Ky., 783 S.W.2d 380 (1990). If the method used here is constitutionally permissible and judicially appropriate, there is no reason why it should not apply equally to other child witnesses as well as child victims.

Thus the real question is whether this new method for presenting evidence is constitutionally permissible and judicially appropriate. In *Commonwealth v. Willis,* Ky., 716 S.W.2d 224 (1986), I authored a Concurring Opinion, joined by Justices Gant and Vance, which represented the views on when to use the videotape procedure held by three of the four votes upholding the use of this procedure for the testimony of child victims. We upheld the right to use a videotape procedure shielding the child from face-to-face confrontation with the accused, but only in specified, narrowly circumscribed circumstances. We state the ...

> "accused's constitutional rights [of confrontation] are preeminent. They cannot rightfully be impaired by either the General Assembly or the Judiciary, no matter how appealing the reason for doing so may appear at the time."

The test for using the videotape alternative should *not* be the sensibilities of the witness, nor even testimony regarding short term psychiatric trauma or emotional distress.

The use of this method does not turn on the witness' discomfort, or stress and anxiety.

In the present case, the sole testimony at the hearing on the motion was that of Dorothy Keller, a psychiatric nurse with a Masters Degree in social work. Although she was not challenged on her qualifications, she hardly qualified to provide psychiatric evaluation. She testified the child was already removed from the parental residence, and living in a foster home. The strongest reasons advanced by Ms. Keller against requiring the child to testify in court was that the child would be "traumatized more than the average child by the courtroom setting," because she would feel it was a "betrayal" of her father. The child had expressed "anxiety" and "dread" about testimony, but was "not fearful." She "could do it," i.e., testify in open court, but "it is a stress which I would hope she wouldn't" have to endure.

The prosecutor argued in support of permitting the closed circuit television alternative that the "standard [for deciding] is that the trauma will be more than de minimus." The judge sustained the motion. This was certainly an erroneous standard.

The obvious inference the jury will draw from using a procedure of this nature is that the accused is so terrifying, or did something so terrible the victim or witness is afraid to testify in front of him. Perhaps this impression will be mitigated somewhat by keeping the defendant as well as the witness out of the courtroom during the time of the closed circuit testimony, as was done here. But there is no way to completely dispel the obvious inference generated by the use of closed circuit television. So it is, at best, a compromise. As such it should be utilized only upon proof of a compelling need to use the television alternative in order to obtain truthful testimony from the child. This was not the standard the judge used, or the reason behind the trial court's ruling here. Nor was there a factual basis presented sufficient to support such a finding.

To affirm in this case would provide a slippery slope away from essential constitutional protection.

Therefore, I vote to reverse and remand.

STEPHENS, C.J. and STUMBO, J., join.

LAMBERT, Justice, dissenting.

The trial court committed no abuse of discretion in permitting the child witness, appellant's natural daughter, to testify by means of closed-circuit television. From the psychological evidence presented and from the inherent nature of the parent-child relationship, the child witness would have been traumatized by being required to testify against her father, face-to-face.

The Supreme Court of the United States recognized in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), that the Sixth Amendment right of confrontation does not in every case require an in-person meeting between the witness and the accused. The Court held that to require such confrontation would result in the exclusion of virtually all hearsay testimony despite the universal existence of many exceptions to the hearsay rule. (Kentucky recognizes twenty-three such exceptions. KRE 803.) Rather, the Court determined that a child witness need not be subjected to such psychological trauma, particularly where it would impair the child's ability to communicate, providing a procedure was in place which insured the reliability of the evidence by subjecting it to adversarial testing and preserving the essence of effective confrontation.

In *Commonwealth v. Willis*, Ky., 716 S.W.2d 224 (1986), this Court upheld the constitutionality of KRS 421.350(3) and (4) by which a trial judge is granted discretion to utilize closed-circuit television to prevent a child victim from observing the defendant. We also held that Section 11 of the Constitution of Kentucky should be consonantly construed with the Sixth Amendment to the Constitution of the United States. Thus, *Maryland v. Craig* would be highly persuasive.

While the statute referred to hereinabove addresses only child victims, by virtue of our determination that it is not unconstitutional, it follows that a trial court would have inherent power to fashion a similar means of protection for non-victim child witnesses. Provided there are proper safeguards and provided the trial judge determines that a means such as closed-circuit television is nec-essary to obtain the testimony and protect the child, there is no constitutional violation and no abuse of discretion.

SPAIN and WINTERSHEIMER, JJ., join this dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the trial judge did not commit reversible error when he allowed a child to testify by closed circuit television. The defendant received a fundamentally fair trial. I appreciate the views expressed in the concurring and dissenting opinions but I wish to state my opinion separately.

The 8 year old rape victim testified in open court. This appeal centers around the video testimony of her 12 year old half-sister who witnessed the crime. Full cross-examination was permitted. The defendant was the father of the witness and the stepfather of the victim.

*Commonwealth v. Willis*, Ky., 716 S.W.2d 224 (1986) upheld the constitutionality of KRS 421.350(3) and (4) which allowed use of closed circuit television for crime victims. *Willis, supra,* also held that Section 11 of the Kentucky Constitution should be construed as being consistent with the 6th Amendment to the U.S. Constitution. *Willis* contains an in depth review of the legal philosophy underlying use of closed circuit television testimony.

Now we face the question of a child witness who is not a direct victim. The language of the statute does not address this situation. The legislature does not have exclusive authority in this area. The doctrine of separation of powers can be applied so that the responsibility of the trial judge to admit testimony cannot be limited by statute. However, the rational basis for the constitutionality of the video procedure can be logically applied to a child witness. The problem solved by the statute is fear; it is the same problem for a child witness as a child victim.

Application of any right, constitutional or otherwise, must pass a balancing test. Here the concern for ascertaining the truth is of primary importance. The rights of the ac-

cused are important but the victim and witnesses have an expectation to be free of fear. *Cf. Willis.* The proper balance is the duty of the trial judge. The sensibilities of the witnesses must be of great concern to the search for truth and the proper conduct of any judicial proceeding. The major consideration is whether the testimony is truthful and accurate. A witness who is intimidated or paralyzed by fear is of a questionable value.

*State v. Sheppard,* 197 N.J.Super. 411, 484 A.2d 1330 (1984) upheld a trial court which permitted, without an authorizing statute, the use of closed circuit television testimony under circumstances similar to those described in KRS 42.350. *Willis.* It could be argued that the perfect solution would be the enactment of a statute extending protection to child witnesses. Certainly the legislative adoption of a discretionary method for admission of evidence is not violative of separation of powers. *Cf. Willis.*

However, the trial judge controls the conduct of the trial. The rights of the accused must be balanced with the need for a truthful fact finding process. *Cf. Willis,* p. 229.

Guidelines which could be applied by any trial judge in such a case may be found in *Sheppard, supra.* They include but are not limited to long range emotional consequences and accuracy of testimony. *See Sheppard,* 484 A.2d pp. 1332 and 1344; *Willis* p. 230–31.

I would affirm the conviction.

SPAIN, J., joins in this dissent.