**Dennis R. GREENE Sr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2004–SC–000046–MR.

Supreme Court of Kentucky.

May 18, 2006.

Rehearing Denied Aug. 24, 2006.

77

Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Samuel J. Floyd, Jr., Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, for Appellee.

Opinion of the Court by Justice SCOTT.

## I. Introduction

Appellant Dennis Greene was tried and convicted by a Kenton County Jury in November 2003 for the murder of his wife, Tara Greene. He was sentenced to life in prison and now appeals to this court as a matter of right, Ky. Const. § 110(2)(b), asserting six claims of error, viz: (1) the evidence was insufficient to prove he was *not* acting under an extreme emotional disturbance (EED); (2) the trial court allowed a minor not covered by KRS 421.350 to testify from outside the courtroom via closed circuit television; (3) the trial court failed to inquire into whether the minor's testimony was the product of personal observation, rather than coaching by adults; (4) the trial court admitted gruesome crime scene photographs; (5) the trial court admitted portions of a "hip hop" video depicting defendant rapping about his wife's death with friends after the offense; and (6) the trial court admitted unduly prejudicial testimony about defendant's past affair.

For reasons set out herein, we affirm the judgment of the trial court.

## II. Factual Background

Medical testimony established Appellant killed his wife by cutting "her throat from ear to ear, so deeply that it scraped the spine." On the day of her death, he left work early to go home. Before leaving, he told a friend, "I'm going to do it. I'm going to kill her."

Upon arriving home, they began to argue. During the argument she told him she had been unfaithful with four different men.

After dinner, she and their son, C.G., went to his bedroom to watch TV. While there, Appellant contends he heard his son yelp in pain. Appellant went to the bedroom to check on C.G. Tara then left the bedroom and went to the kitchen.

Appellant claims C.G. then showed him a red mark on his shoulder. Appellant lit a marijuana cigarette and went to the kitchen to confront Tara. She took the cigarette, he grabbed at it, and it fell down her shirt. She then hit Appellant. He grabbed her and put her in a chokehold. C.G. then walked in, but was sent back to his room. Appellant then reached behind him, grabbed a turkey knife, and "cut her throat."

He then dropped her to the floor and covered her with a blanket. He changed his pants and shoes, put a jacket on over his bloody shirt, and took C.G. to his mother's house. He then left for Chicago, where he claims he planned to kill himself. During the trip, he made several calls, most to his friends in Chicago, but several were made to a former lover, Amy Baumgardener, who joined him in Chicago. Upon her arrival, Appellant was making a series of rap videotapes with his friends, several of which reflected on his thoughts and actions related to Tara's death.

Tara's body was found by the police who quickly suspected Appellant. They learned Appellant was at a friend's house in Chicago. On May 8th, the building Appellant was in was surrounded. He was later talked out by the Chicago Police.

### III. ANAYLSIS

### A. EXTREME EMOTIONAL DISTRESS

Appellant first argues that the evidence was insufficient to prove that Appellant was *not acting* under an extreme emotion-al disturbance at the time of his wife's death.

In this regard we noted in *Holland v. Commonwealth*, 114 S.W.3d 792, 805 (Ky.2003)(quoting *Coffey v. Messer*, 945 S.W.2d 944, 946 (Ky.1997)), that "once evidence was produced to prove the existence of EED, 'its absence be[came] an element of the offense.'" Moreover, KRS 500.070 establishes that the Commonwealth has the burden of proving every element of the case beyond a reasonable doubt. Here, the essential elements are set out in KRS 507.020 (murder) and KRS 507.030 (manslaughter).

In regard to how EED fits into this statutory pattern, our prior decisions have established that

A person is guilty of murder under KRS 507.020(1)(a) if he/she intentionally causes the death of another, "except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." A person is guilty of manslaughter in the first degree under KRS 507.030(1)(b) if he/she intentionally causes the death of another "under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in subsection (1)(a) of KRS 507.020."

*Fields v. Commonwealth*, 44 S.W.3d 355, 356–57 (Ky.2001) (quoting *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky. 1986)).

Thus, the same act, or series of acts, may be murder or manslaughter in the first degree depending on a finding of

EED. Admittedly, there have been some inconsistencies in our prior decisions concerning which party is properly encumbered with the burden of proof. However, our more recent opinions have categorized EED, or more properly, the absence of it, as an element of the substantive offense, rather than as a defense. *See Holland v. Commonwealth,* 114 S.W.3d 792 (Ky.2003); *Stopher v. Commonwealth,* 57 S.W.3d 787 (Ky.2001); *Springer v. Commonwealth,* 998 S.W.2d 439 (Ky.1999); *Cecil v. Commonwealth,* 888 S.W.2d 669 (Ky.1994); *Morgan v. Commonwealth,* 878 S.W.2d 18 (Ky.1994); *Holbrook v. Commonwealth,* 813 S.W.2d 811 (Ky.1991) *overruled on other grounds by Elliott v. Commonwealth,* 976 S.W.2d 416 (Ky.1998); *Gall v. Commonwealth,* 607 S.W.2d 97 (Ky.1980) *overruled on other grounds by Payne v. Commonwealth,* 623 S.W.2d 867(Ky.1981).

Justice Cooper, in his *Kentucky Instructions to Juries* (Criminal) § 3.21, (1999) includes the absence of EED as an element of the crime of murder. Yet, in his comment to Section 3.21, he notes that this inclusion is controlled by the evidence presented. *Id.*

In *Spears v. Commonwealth,* 30 S.W.3d 152, 154 (Ky.2000), we explained that "[a]lthough the Commonwealth must prove every element of murder beyond a reasonable doubt, the Commonwealth need not *affirmatively* disprove EED unless the evidence of EED is so overwhelming that it necessitates acquittal on the charge of murder." (Emphasis added). Stated more simply, the Commonwealth is only required to *affirmatively disprove* EED when there is enough evidence presented to the fact finder that the defendant would otherwise be entitled to a directed verdict of acquittal because of the presence of EED. As was aptly stated in *Wellman v. Commonwealth,* 694 S.W.2d 696, 697 (Ky. 1985), "[t]he presence or absence of extreme emotional distress is a matter of evidence .... They are a matter of the circumstances of each homicide."

■ "An instruction on murder need not require the jury to find that the defendant was *not acting* under the influence of extreme emotional disturbance *unless* there is something in the evidence to suggest that he *was,* thereby affording room for a reasonable doubt ..." *Gall v. Commonwealth,* 607 S.W.2d 97, 109 (Ky.1980)(emphasis added). Conversely, when there is evidence, the instruction should be included.

■ Thus, where proof is presented that would support the finding of EED, and the absence of EED is then a statutory element, then the burden switches to the Commonwealth to disprove it beyond a reasonable doubt. But that does not mean that it has to affirmatively introduce proof of the non-existence of EED, if such proof is already present. The Commonwealth loses if no such proof is present, but where, as here, the proof, when taken in a light most favorable to the Commonwealth, meets this burden, it is then a jury question.

■ Although EED is essentially a restructuring of the old common law concept of "heat of passion," the evidence needed to prove EED is different. There must be evidence that the defendant suffered "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth,* 715 S.W.2d 464, 468–69 (Ky.1986). "[T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted. It is not a mental disease or illness.... Thus, it

is wholly insufficient for the accused defendant to claim the defense of extreme emotional disturbance based on a gradual victimization from his or her environment, unless the additional proof of a triggering event is sufficiently shown." *Foster v. Commonwealth,* 827 S.W.2d 670, 678 (Ky. 1991) (citations omitted). And the "extreme emotional disturbance ... [must have a] reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." *Spears,* 30 S.W.3d at 155.

Thus, under *Spears,* given the evidence introduced, the burden of proof in this case was on the Commonwealth, and the absence of EED was a proper element of the charge. However, viewing the evidence in a light most favorable to the Commonwealth, we conclude that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ It must be remembered "it is not the court but a jury that must make a factual determination of whether a particular defendant acted under the influence of extreme emotional disturbance." *McClellan,* 715 S.W.2d at 467. The courts will test the sufficiency of the evidence, and we have to view it in a light most favorable to the prosecution; however, once found sufficient, it is for the jury to find the facts, and they are not bound to view it in a light most favorable to the prosecution.

■ Although there certainly was evidence from which a jury could have found the presence of EED, in this instance—the same evidence also supported the contrary conclusion. Thus, we cannot say the jury was wrong when, after hearing all the evidence, it returned a verdict convicting

Appellant of murder. Under the evidence presented, it was clearly not unreasonable for the jury to do so.

Thus, hopefully these questions will now be laid to rest. In summary, (1) if EED is made an issue by the evidence, an instruction including it as an element of the crime should be given; (2) in the same instance (being a statutory element in the case), it then becomes an element of the crime, and the burden of proof lies with the Commonwealth; (3) the courts will then test the sufficiency of the proof, if properly presented and preserved, both at trial, upon a motion for directed verdict, and "insufficiency of the evidence" on appeal; but, (4) if the evidence passes the test, the question is one for the jury, as was the case here.

Therefore, we find no error.

## B. MINOR TESTIFYING VIA CLOSED CIRCUIT TELEVISION

The defendant also argues the court erred in allowing C.G., a seven year old minor, to testify at trial from outside the courtroom via closed circuit TV in violation of the defendant's right to confront witnesses as guaranteed under the Sixth Amendment of the U.S. Constitution and Section 11 of the Kentucky Constitution.

"The Confrontation Clause of the Sixth Amendment ... provides: 'In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'" *Maryland v. Craig,* 497 U.S. 836, 844, 110 S.Ct. 3157, 3162, 111 L.Ed.2d 666 (1990). Section 11 of the Kentucky Constitution reads, in part, "In all criminal prosecutions, the accused has the right to ... meet the witnesses face to face."

KRS 421.350, on the other hand, allows children who were victims of, or witnesses,

of certain enumerated crimes, at a time when they were twelve years of age or younger, to testify from a room other than the courtroom, if approved by the trial court under the guidelines set out. Once approved, the defendant, court and jury are to be in the courtroom viewing the testimony, while the attorneys and other necessary personnel are in the room from which the child testifies. In this regard, the statute is clear that "the Court shall permit the defendant to observe and hear the testimony of the child in person, and shall ensure that the child cannot hear or see the defendant." KRS 421.350(2). We have previously upheld KRS 421.350 in challenges based on the Sixth Amendment and Section 11 of our Constitution. *See Commonwealth v. Willis,* 716 S.W.2d 224 (Ky.1986).

In this case, however, C.G. was not a member of the class of minors authorized to testify under KRS 421.350. KRS 421.350(1) is limited to specific categories of crimes, mostly sexual, which may be subject to "out-of-the-courtroom" testimony by a victim, or witness, twelve or under. Murder and/or First Degree Manslaughter are not included in the crimes listed.

In *George v. Commonwealth,* 885 S.W.2d 938 (Ky.1994), we reversed the conviction due to the testimony of a minor under circumstances similar to these, *where the minor was not a "victim" of a listed offense, only a witness and, therefore, not covered by KRS 421.350(1)5.*[1] We also noted that this procedure "does not provide a blanket process for taking the testimony of every child witness by TV simply because testifying may be stressful." *Id.* at 941.

Although we have upheld the constitutionality of KRS 421.350, in its limited sphere, *Willis, supra,* "it is of primary import that an accused's constitutional rights remain preeminent. Impairment of these rights, for however an appealing reason, fails to provide justification for the impairment." *George,* 885 S.W.2d at 940.

The limitations of KRS 421.350 being obvious, the court erred in allowing C.G. to testify under its (or similar) procedures in this case. More importantly however, SCR 1.040(5) binds the trial courts to follow established precedents. And even though the trial court's handling of the matter in this case was somewhat appealing under the evidence presented to it, "judicial consistency must be observed in order to maintain a responsible and efficient court system." *Commonwealth v. Blair,* 592 S.W.2d 132, 133 (Ky.1980).

Having found error, RCr 9.24 commands we not reverse if the error is harmless. RCr 9.24 requires:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

Violations of the confrontation clause of the Sixth Amendment under the United States Constitution and Section 11 of the Kentucky Constitution are subject to a harmless error analysis. *See Coy v. Iowa,* 487 U.S. 1012, 1021–22, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988).

---

1. 1996 Kentucky Laws Ch. 178 (S.B.169) later expanded KRS 421.350 to cover minor witnesses of sexual abuse in addition to victims.

Harmlessness in this instance, however, "must ... be determined on the basis of the remaining evidence." *Id.* at 1022. An error is harmless where, considering the entire case, the substantial rights of the defendant are not affected or there appears to be no likely possibility that the result would have been different had the error not occurred. *Scott v. Commonwealth*, 495 S.W.2d 800, 801–02 (Ky.1972), *cert. denied*, 414 U.S. 1073, 94 S.Ct. 587, 38 L.Ed.2d 479 (1973).

 Here, C.G. was seven years old and had witnessed, at least partially, his mother's struggle with his father just prior to her death. C.G. stated that on the night Appellant took him to his grandmother's, his parents had been in the living room and kitchen while he was in his room watching television. In the kitchen, C.G. said he saw "my daddy pushing my mom against the counter and my daddy choking my mommy." He stated that he saw his dad using both hands to choke his mother, and that after seeing this, he went to his room. He stated that his mother fell backwards. He did not remember watching TV with his mother that evening while Appellant was at home, and he denied that his mother had hit him. He said that he was playing in the dumpster when his dad got home, and his dad made him go inside.

> As Appellant noted in his brief,
> it is clear that C.[G]. did not witness the crime, and his testimony did not refute any significant aspect of [Appellant's] two statements to police. The Commonwealth did not ever cite to a fact proved by C.[G.'s] testimony alone in its argument, nor could they. The only effect that excluding C.[G.'s] testimony would have had on the Commonwealth's case

was that the Commonwealth would not have been able to show the jury the image of C.[G.], fidgeting in his chair, describing how he walked in on his father killing his mother.

In fact, the Appellant never disputed his role in Tara's death, only the extent of his culpability. He told the officers that when he arrived home from work on the afternoon of May 4, 2003, he found C.G. was outside without adult supervision, that C.G. was playing in a dumpster and that his wife had been drinking. He stated that his wife later struck their son, and that he and his wife got into a physical altercation in the kitchen when she began smoking his marijuana cigarette. He told the officers that he then got his wife in a head lock or a chokehold and that he choked her for two to three minutes. At one point C.G. came into the kitchen, but Appellant told him to go back to his room and finally Appellant said he just "snapped," reached behind him, got a knife out of a drawer, and "poked" his wife in the neck.[2] He stated he then dropped her to the floor and put a blanket over her body, changed his pants and shoes, put a jacket over his bloody shirt and took C.G. to his mother's home in Cincinnati. From there he drove to Chicago, calling several friends along the way.

One of his friends, Matthew Kirst, testified that the Appellant called him from work that afternoon, expressing his frustrations with Tara and saying, in regards to his wife, "I'm going to do it." The Appellant called Kirst back later that night and told him "I did it. It's over." In addition, the "rap videos" depict Appellant in Chicago after the killing, rapping with his friends, making statements such as:

---

2. It should be remembered the medical evidence established Tara died from her throat

being cut "from ear to ear, so deeply that it scraped the spine."

- "B—— made me mad, and I had to take her life. My name is Dennis Greene and I ain't got no f——ing wife."
- "I knew I was gonna be givin' it to her ... when I got home..."
- "I cut her motherf——in' neck with a sword..."

In essence, the Appellant concedes that C.G.'s testimony was basically redundant, other than as to whether or not his mother hit him, when he and his mother were in his room together watching TV. Given this one minor discrepancy between C.G.'s testimony and the Appellant's, it is hard to envision that C.G.'s testimony was in any way "critical" to the Commonwealth's case. Quite plainly, the Commonwealth's other evidence of Appellant's mental state and actions were overwhelmingly supportive of the verdict ultimately returned by the jury in this case.

Thus, when evaluated within the context of the remaining evidence, the error in allowing C.G. to testify from outside the courtroom was harmless.

## C. MINOR'S COMPETENCY TO TESTIFY

Having already determined C.G's testimony was error, albeit harmless, any issue as to his competency to testify is moot and, thus, will not be addressed.

## D. INTRODUCTION OF PHOTOGRAPHS

■ Appellant next charges the trial court erred by allowing the introduction of numerous photographs on matters not disputed at trial. The Commonwealth entered nearly 100 photographs into evidence, most of which were taken at the crime scene and many of which were gruesome. The general rule regarding the admissibility of crime scene photographs, established in *Brown v. Commonwealth*, 558 S.W.2d 599, 605 (Ky.1977), is "that a pho-

tograph that is otherwise admissible does not become inadmissible simply because it is gruesome and the crime is heinous." The threshold question, therefore, is whether the photographs were admissible in the first place.

■ KRE 402 establishes that "all relevant evidence is admissible." KRE 401 states:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The photographs are relevant evidence because they prove the existence of the victim's physical injuries. Because the photographs are relevant, they are admissible unless they are properly excluded by another rule of evidence. KRE 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The question then becomes whether the photographs, although relevant, should be excluded because their prejudicial effect substantially outweighs their probative value. Photographs showing the extent of the victim's injuries are, by their very nature, prejudicial, but the photographs clearly have significant value to the jury in determining the extent of Appellant's culpability. His characterization was he "poked her" in the neck.

Appellant argues that the cumulative effect of the photographs were so inflammatory that he was unduly prejudiced. Appellant relies on *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136

L.Ed.2d 574 (1997) and *Norris v. Commonwealth*, 89 S.W.3d 411 (Ky.2002), for the proposition that the probative value of evidence should not be viewed in the abstract, but rather be given a "discounted probative value," meaning the depreciated value of the evidence taken in light of "other available alternatives to prove the fact in issue." *See Old Chief*, 519 U.S. at 183, 191, 117 S.Ct. 644. Appellant also cites *Poe v. Commonwealth*, 301 S.W.2d 900 (Ky.1957) for the proposition that

> [t]he introduction of gruesome photographs, bloody clothing, and the like is almost inevitably accompanied by the risk of inflaming the minds of the jurors to the prejudice of the accused. Where necessary to prove a contested relevant fact, their probative value is usually held to outweigh any possible prejudicial effect they might have. But where the facts sought to be proved by the possibly prejudicial evidence are admitted by the defense, it is difficult to understand what probative value (other than as cumulative evidence) such evidence might have . . . .

*Id.* at 902–03.

Appellant argues incorrectly, however, that because the underlying facts were essentially uncontested, the photographs provided no help to the jury on any contested, relevant fact in the case. More pointedly, he argues that the photographs serve no purpose but to inflame the jury against Appellant.

Appellant's argument fails, however, because "[t]his court knows of no rule or principle of law that requires the Commonwealth's Attorney to try his case by stipulation." *Payne v. Commonwealth*, 623 S.W.2d 867, 877 (Ky.1981). Moreover, the photographs have significant probative value in that they would have been helpful to the jury in reaching its determination on Appellant's EED defense, as well as buttressing the testimony of the Commonwealth's other witnesses, including medical witnesses.

Even if the photographs were inflammatory, that does not automatically mean they were inadmissible. In *Adkins v. Commonwealth*, 96 S.W.3d 779, 794 (Ky. 2003), we held "[t]he rule prohibiting the exhibition of inflammatory evidence to a jury does not preclude the revelation of the true facts surrounding the commission of a crime when these facts are relevant and necessary." Because the probative value of the photographs is not substantially outweighed by their prejudicial effect, we find no abuse of discretion, and the photographs were properly admitted.

### E. RAP VIDEO

Next, appellant argues that the trial court violated KRE 403 and 404(B) by admitting portions of a video depicting Appellant talking or rapping with his friends after he killed his wife. In this video, shot days after the murder, Appellant can be seen boasting of his crime in a seven minute video montage, saying things such as:

- "B—— made me mad, and I had to take her life. My name is Dennis Greene and I ain't got no f——ing wife."
- "I knew I was gonna be givin' it to her . . . when I got home . . ."
- "I cut her motherf——in' neck with a sword . . ."
- "I'm sittin' in the cell starin' at four walls . . ."

Appellant contends that showing the jury this video violated KRE 403 and 404(b) because "evidence of prior, uncharged bad acts is not admissible just because a party asserts that such evidence tends to support one of the . . . purposes [listed in the rule]." *Commonwealth v. Maddox*, 955 S.W.2d 718, 722 (Ky.1997). We have traditionally held that evidence

primarily designed to cast aspersions on the character of the defendant should not be admitted. In *Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky.1992), we held that "evidence of criminal conduct other than that being tried is admissible only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character." We also held in *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky.1994), that

> "[i]t is a well-known fundamental rule that evidence that a defendant on trial had committed other offenses is never admissible unless it comes within certain exceptions, which are well-defined in the rule itself." [3] *Jones v. Commonwealth* [303 Ky. 666], 198 S.W.2d 969, 970 (Ky. 1947). For this reason, trial courts must apply the rule cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime.

 Appellant contends that the rap video is simply character evidence introduced to prove a "criminal disposition." *Billings*, 843 S.W.2d at 892. Appellant, however, misapplies the character evidence standard. Evidence of prior arrests, convictions, or bad acts is excluded not because they are not relevant, but rather, because the probative value of the character evidence is substantially outweighed by the prejudicial effect. Here, that is not the case because (a) the video refers to Appellant's actions and emotions regarding this crime, not a previous offense, (b) the video sheds light on Appellant's EED defense by illuminating his mental state shortly after the killing, and (c) the video establishes premeditation and motive in Appellant's own words. For the foregoing reasons, we affirm the trial court's admission of the rap video montage.

## F. EVIDENCE OF A PAST AFFAIR

Lastly, the Appellant argues the trial court violated KRE 404(B) by holding that if Appellant testified about his wife's assertion that she had been unfaithful, then the Commonwealth could introduce evidence of Appellant's past affair with Amy Baumgardener. With this ruling in mind, Appellant himself disclosed the affair to the jury.

We note at the outset that KRE 404(b)(1) has no application to this evidence. That Rule proscribes the introduction of evidence tending to prove a particular character trait "in order to show action in conformity therewith." Evidence of immorality would not tend to prove a propensity or predisposition *to commit homicide*. Thus, the evidence must be tested by the general rule of relevancy, i.e., whether it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. A "fact that is of consequence to the determination of the action" includes not only a fact tending to prove an element of the offense, but also a fact tending to disprove a defense.

---

3. KRE 404(b) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
 (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
 (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Relevancy is established by any showing of probativeness, however slight.

*Springer*, 998 S.W.2d at 449.

We further note that

[a]n item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not even make that proposition appear more probable than not.... It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable.

*Turner v. Commonwealth*, 914 S.W.2d 343, 346 (Ky.1996)(quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.05, at 53 (3d ed.1993) and Cleary, *McCormick on Evidence* at 542–543 (3d ed.1984)).

 Accordingly, we find that evidence of the Appellant's past affair with Ms. Baumgardener is admissible because the affair speaks to his claim of EED as related to the emotional impact of his wife's disclosures about *her* affairs.

Moreover, the affair is ascribed additional relevancy because Appellant called Ms. Baumgardener several times the night of the murder, and she went to Chicago the very next day to see Appellant. A reasonable juror could find that evidence of the affair made the existence of EED less probable than it would be without the evidence. Thus, in this context, we cannot find an abuse of discretion.

For the reasons stated, we affirm.

LAMBERT, C.J., and ROACH, J., concur.

COOPER, J., concurs in result only.

WINTERSHEIMER, J., concurs in result only because it was not error of any kind.

JOHNSTONE, J., concurs by separate opinion, with GRAVES, J., joining that concurring opinion.

Concurring Opinion by Justice JOHNSTONE.

Although I agree that the trial court erred in permitting C.G. to testify via closed circuit television, I write separately because I disagree with the harmless error analysis undertaken by the majority.

In determining that the error is harmless, the majority examines the remaining evidence of Appellant's guilt, noting that C.G.'s testimony was "basically redundant" and largely corroborated by the physical evidence and Appellant's own admissions. This conclusion implies that the error is harmless because the jury would have found Appellant guilty even without C.G.'s testimony. Such an analysis would be relevant had the trial error concerned the admission or scope of C.G.'s testimony. However, in this case, the trial error lay in allowing C.G. to testify via closed circuit television rather than on the stand. Thus, the pertinent inquiry is not whether the jury would have found Appellant guilty of murder absent C.G.'s testimony due to the weight of the remaining evidence. Rather, it is whether a substantial possibility exists that the outcome would have been different had C.G. testified *in open court.*

The jury rejected Appellant's claim that he killed his wife while in the midst of an extreme emotional disturbance. Though the majority characterizes the testimony as redundant, C.G.'s testimony was actually quite crucial to the Commonwealth's case, as conceded at oral argument. C.G. directly contradicted Appellant's claim that he was sent into an EED when Tara hit the child, as C.G. testified that his mother

never hit him that evening. C.G. further corroborated the autopsy findings that Tara had been choked with two hands, also contrary to Appellant's statements. Because it ultimately found Appellant guilty of murder, it is fair to assume that the jury at least partially accepted C.G.'s version of events over Appellant's. In my opinion, there is no substantial possibility that the jury would have been *less* inclined to accept C.G.'s testimony had he testified in open court. In fact, common sense dictates that the testimony of a very young and tragically victimized child will be even more persuasive when delivered face-to-face. In short, if the jury believed C.G.'s version of events after viewing his testimony on television, I find no substantial possibility that it would have rejected that exact same testimony if given from the witness stand.

GRAVES, J., joins this concurring opinion.