**Dennis Mark SPEARS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

and

**Commonwealth of Kentucky, Cross–Appellant,**

v.

**Dennis Mark Spears, Cross–Appellee.**

No. 1999–SC–0708–MR, 1999–SC–0709–MR.

Supreme Court of Kentucky.

Oct. 26, 2000.

John Palombi, Jeff Fleischaker, Assistant Public Advocates, Department of Public Advocacy, Frankfort, for Dennis Mark Spears.

A.B. Chandler, III, Attorney General, Dennis W. Shepherd, Office of Attorney General, Criminal Appellate Division, Frankfort, for Commonwealth of Kentucky (1999–SC–708–MR).

A.B. Chandler, III, Attorney General, Joseph T. Bouvier, Dennis W. Shepherd, Office of Attorney General, Criminal Appellate Division, Frankfort, for Commonwealth of Kentucky (1999–SC–709–MR).

COOPER, Justice.

In the early morning hours of August 7, 1998, Appellant, Dennis Spears, shot and killed his wife, Kim Spears, who was asleep on the sofa. A Fayette Circuit Court jury found Appellant guilty of murder and he was sentenced to twenty years in prison. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting that there was insufficient evidence to convict him of any offense other than first-degree manslaughter. The Commonwealth cross-appeals, arguing that there was insufficient evidence to warrant even an instruction on first-degree manslaughter.

Appellant and his wife had been married for eighteen years. They raised two children. Both had decent jobs. However, their relationship deteriorated when Appellant developed diabetes, which affected the couple's sexual relationship. By the end of 1997, Appellant began to notice a change in his wife's demeanor: she no longer wore her wedding band, she became increasingly cold and distant, and she often did not come home at night. Though Appellant tried numerous aids to improve their relationship, his wife responded with indifference.

By July 1998, Appellant suspected that his wife was having an affair. After a family vacation to Florida, the victim took off an additional week to housesit for a friend in Louisville. Appellant tried to reach her, but could not find her. He even drove to Louisville one night to search for her, but was unsuccessful. On August 5, Appellant trailed his wife from her job in Lexington to a Frankfort grocery parking lot where he observed a tryst between his wife and another man. Appellant photographed the two as they embraced and watched them drive off together. He followed them to Louisville and observed the two enter an apartment.

Had Appellant then entered the apartment and exploded with rage, this case might be different; however, a day and a half passed before the explosion occurred. That afternoon, Appellant merely watched his wife and the man enter the apartment, wept, and returned home. When his wife returned later that night, Appellant confronted her and she admitted her infidelity. Appellant ordered her out of the house.

On August 6, Appellant went to work as usual. His wife phoned him and asked to come home that night and Appellant agreed. After running some errands that afternoon, Appellant returned home and ate dinner with his wife. He went to bed at 10:00 p.m. Refusing to sleep in the same bed with him, the victim slept on the sofa. Later that night, Appellant's son awakened him to report that some college boys were urinating on his porch and his car. Appellant washed the car off at a gas station, returned home, and confronted the boys. Appellant's wife called the police, and Appellant brought his shotgun downstairs to protect his family. The police told the couple that their son was partly at fault in stirring up trouble. The family arranged for the son to stay at a friend's house, and Appellant drove him across town to spend the night.

Appellant told the police after the murder that upon returning home, he began to reflect upon his life. He was unable to sleep. He thought of divorce and its consequences on his family, his finances and his belongings. He thought for a while longer about losing his wife, then shot her in the head with his shotgun as she slept.

Appellant was indicted for murder in October 1998. At trial, he moved for a directed verdict based upon insufficient evidence of the absence of extreme emotional disturbance (EED). The trial judge denied the motion and instructed the jury on murder and on first-degree manslaughter premised upon EED. The Commonwealth objected to the manslaughter instruction, arguing that Appellant had failed to prove a triggering event. The jury found Appellant guilty of murder.

Appellant's only claim of error is that, based on the evidence presented at trial, no reasonable juror could have found that he did not act under extreme emotional disturbance when he killed his wife. Since his evidence proved EED and the Commonwealth did not affirmatively disprove EED, Appellant argues he was entitled to a directed verdict on the murder charge.

That, however, is not the law. KRS 500.070 states that:

> The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt.... This provision, however, does not require disproof of any element that is entitled a defense ... unless evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal.

A finding that a defendant acted under the influence of extreme emotional disturbance is a defense to the charge of murder because it mitigates the mens rea element of that offense. Although the Commonwealth must prove every element of murder beyond a reasonable doubt, the Commonwealth need not affirmatively disprove EED unless the evidence of EED is so overwhelming that it necessitates acquittal on the charge of murder. *See also Wellman v. Commonwealth*, Ky., 694 S.W.2d 696, 697 (1985); *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 108–109 (1980), *cert. denied*, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (1981), *overruled on other grounds*, *Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981).

Extreme emotional disturbance is the successor to the common law concept of "sudden heat of passion." Though the two are similar, they are not identical. Under pre-penal code law, conduct constituting murder would merit a voluntary manslaughter conviction if the killing occurred in a sudden heat of passion and under provocation "as would have naturally overcome and suspended the self-control of a man of fair, ordinary and average disposition or will power or cause such a one to act rashly or without due deliberation or reflection." *Tarrence v. Commonwealth*, Ky., 265 S.W.2d 40, 51 (1953).

The concept of extreme emotional disturbance entered our jurisprudence with the adoption of the Kentucky Penal Code,

effective January 1, 1975. KRS 507.020(1)(a), provides that:

> a person shall not be guilty [of murder] under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.

*Gall v. Commonwealth, supra,* highlighted the two primary distinctions between EED and sudden heat of passion. Quoting from the Commentary to KRS 507.030, the Court in *Gall* stated "[t]he most significant change . . . is an abandonment of the common law requirement that the killing occur in 'sudden heat of passion' upon 'adequate provocation.'" *Id.* at 108. Under EED, "mitigation is not restricted to circumstances which would constitute provocation 'in the ordinary meaning of the term.' . . . In other words, it is possible for *any event, or even words,* to arouse extreme mental or emotional disturbance." *Id.* at 108. The second basic difference is the requirement that the jury view the situation subjectively, from the defendant's point of view, rather then objectively. *Id.* at 108.

■ *McClellan v. Commonwealth,* Ky., 715 S.W.2d 464 (1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987), defined EED as "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *Id.* at 468–69. This statement makes it clear that the defendant must both be extremely emotionally disturbed and act under its influence. Additionally, our case law requires a "triggering event." *Springer v. Commonwealth,* Ky., 998 S.W.2d 439, 452 (1999); *see also Whitaker v. Commonwealth,* Ky., 895 S.W.2d 953 (1995); *Cecil v. Commonwealth,* Ky., 888 S.W.2d 669 (1994); *Foster*

*v. Commonwealth,* Ky., 827 S.W.2d 670 (1992), *cert. denied,* 506 U.S. 921, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992). However, the triggering event need only be "sudden and uninterrupted." *Foster, supra,* at 678. No definite time frame between the triggering event and the killing is required, so long as the EED remains uninterrupted. *Springer, supra,* at 452. In fact, the onset of EED "may be more gradual than the 'flash point' normally associated with sudden heat of passion," and the law no longer requires the absence of a cooling period between the triggering event and the killing. *McClellan, supra,* at 468–69. In *Springer,* we said "[t]he fact that the triggering event may have festered for a time in [the defendant's] mind before the explosive event occurred does not preclude a finding that she killed her husband while under the influence of extreme emotional disturbance." *Id.* at 452. It is for a jury to decide whether a triggering event has occurred and whether a defendant acted under the influence of EED.

■ In the present matter, sufficient evidence was adduced to warrant an instruction on first-degree manslaughter. We disagree with the Commonwealth's assertion in its cross-appeal that no triggering event occurred. Our past holdings clearly state that the triggering event and the killing need not be simultaneous. Appellant's discovery of his wife's adultery was a sufficient triggering event. It was for a jury to decide whether Appellant acted under the influence of EED. The jury found that he did not.

■ Appellant's contention that the Commonwealth is required to introduce affirmative evidence to disprove that he acted under the influence of EED is also without merit. The fact that the killing occurred more than thirty-six hours after the triggering event sufficed to cloud the EED waters for the jury. Additionally, Appellant's statement to the police, hours after the killing, undermined his EED theory sufficiently to create a jury issue. The

evidence did not mandate a directed verdict on the charge of murder.

Accordingly, the judgment of conviction and sentence imposed by the Fayette Circuit Court are affirmed.

All concur.