# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

2019-SC-000288-MR

DATE 8/20/20

ANTWOIN WILLIAMS      APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.      HONORABLE ANGELA MCCORMICK BISIG, JUDGE
NOS. 16-CR-001681, 16-CR-003365 AND 18-CR-002503

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

In circuit court case numbers 16-CR-001681 and 18-CR-002503, a Jefferson County jury found Antwoin Williams guilty of murder, first-degree wanton endangerment, possession of a handgun by a convicted felon, and being a second-degree persistent felony offender. In case number 16-CR-003365, Williams pleaded guilty to attempted criminal possession of a forged instrument and tampering with physical evidence. Williams was sentenced to a total of thirty years of imprisonment. This appeal followed as a matter of right. *See* KY. CONST. § 110(2)(b). Having reviewed the record and the arguments of the parties, we hereby affirm the judgment of the Jefferson Circuit Court.

# I.   BACKGROUND

On June 10, 2016, Williams spent most of the day riding around in a car with Sequoia Camp, Jacoya Mangrum, and Mangrum's one-year old son. Camp drove, picking up Williams around 11:00 AM, then picking up Mangrum and the child. The group rode around in Camp's vehicle for much of the day, stopping at a friend's house at least once. Troy Cheatham also joined the group, though he drove separately. The group continued to drive around until the early morning hours.

At one point, Camp drove the group to a man's house so Mangrum could collect some money from the man. However, the man was not home, so the group drove to a nearby gas station, arriving sometime around 2:44 AM on June 11, 2016. Soon after, Camp, Mangrum, and Mangrum's son left in Camp's car, but Williams and Cheatham stayed behind. Camp drove Mangrum and her son back to the man's house, and the man gave Mangrum the money she had been trying to collect from him earlier. Camp, Mangrum, and the child then returned to the gas station around 3:44 AM. Williams got into Camp's car, sitting in the back passenger-side seat, while Mangrum sat in the front passenger seat. Her son was in the back seat with Williams. The group left the gas station around 3:50 AM. Cheatham followed behind in his own vehicle.

After the group left the gas station, Williams and Mangrum began arguing over gas money. At some point during the argument, Mangrum punched Williams, and the fight escalated into a physical fight. Camp could not get the two to stop fighting, and she continued to drive for several blocks before

2

pulling over. She flagged Cheatham down, who pulled over and got out of his car. He and Camp physically separated Williams and Mangrum, but the two continued to cuss at each other. Soon, Williams and Mangrum, now outside of the vehicle, began physically fighting again. Camp and Cheatham separated Williams and Mangrum again, and Camp told Mangrum to get back into the car so Camp could drive her home. Mangrum sat down in the front passenger seat of Camp's car. The passenger-side door was still open, however. Mangrum then picked up Williams's phone and threw it on the ground. Williams then came around the vehicle and shot Mangrum in the head before running away. Camp removed Mangrum's child from the backseat and called 911. Mangrum died at the scene.

Williams was arrested the following day after a routine traffic stop. The matter proceeded to a four-day jury trial beginning February 19, 2019. The jury ultimately found Williams guilty of one count of murder, one count of first-degree wanton endangerment, one count of possession of a handgun by a convicted felon, and one count of being a second-degree persistent felony offender. The jury recommended a total sentence of thirty years of imprisonment. Williams also pleaded guilty to one count of attempted criminal possession of a forged instrument and one count of tampering with physical evidence, for charges arising from the June 12, 2016 traffic stop. He received a one-year sentence on each of these convictions. All sentences were ordered to run concurrently, for a total sentence of thirty years of imprisonment. This appeal followed as a matter of right.

3

## II.    ANALYSIS

Appellant argues that the trial court erred in refusing to give a jury instruction on first-degree manslaughter under extreme emotional disturbance. Defense counsel requested this instruction at trial, arguing that the fight between Williams and Mangrum lasted approximately four miles and the roughly fifteen-minute altercation sufficiently enraged Williams. The trial court ultimately denied the request to give an extreme emotional disturbance instruction. The court explained that the fighting and punching did not rise to the level necessary to warrant such an instruction, and a fight over money and a cell phone was not the type of extreme emotional distress contemplated by the law. Rather, the trial court explained, this was better characterized as "garden-variety anger." The case was therefore submitted to the jury without an extreme emotional disturbance instruction.

Later, Williams filed a Motion for A New Trial, again arguing that the trial court should have provided an instruction for first-degree manslaughter under extreme emotional disturbance. The trial court denied the motion, again explaining that there was no evidence to support such an instruction. The trial court explained, "At best, the parties had a dispute over possession of a cell phone and a few dollars. The altercation had ended by the time of the shooting." The trial court again referred to the altercation as "garden-variety anger over a cell phone" that "in no way rose to the level that would support the Court giving an instruction of Extreme Emotional Disturbance."

4

We review the trial court's ruling on the extreme emotional disturbance jury instruction for abuse of discretion. *Tunstull v. Commonwealth*, 337 S.W.3d 576, 583 (Ky. 2011) (citation omitted). In doing so, we are mindful that "it is the duty of the trial judge to prepare and give instructions on the whole law of the case . . . [including] instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Holland v. Commonwealth*, 114 S.W.3d 792, 802 (Ky. 2003) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999)) (internal quotation marks omitted). However, the trial court should instruct on a lesser-included offense[1] "only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998) (citation omitted). In considering this issue, we review the evidence in the light most favorable to the party that requested the instruction. *Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005) (citation omitted).

Under Kentucky Revised Statute ("KRS") 507.020(1)(a), a person is guilty of murder when

> [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of

---

[1] Manslaughter in the first degree is a lesser-included offense of murder. *Holland,* 114 S.W.3d at 805.

a person in the defendant's situation under the circumstances as the defendant believed them to be.

Accordingly, a person who intentionally causes the death of another is not guilty of murder if he was acting under the influence of extreme emotional disturbance, as defined in the statute. Instead, he is guilty of manslaughter in the first degree under KRS 507.030(1)(b). That statute provides that a person is guilty of manslaughter in the first degree when

> [w]ith intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in subsection (1)(a) of KRS 507.020.

Accordingly, acting under extreme emotional disturbance "does not exonerate or relieve one of criminal responsibility." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468 (Ky 1986). Rather, it "reduces the degree of homicide from murder to manslaughter. In that respect, it serves the same function as 'acting in sudden heat of passion' in pre-penal code times." *Id.*

Two primary distinctions exist between extreme emotional disturbance and sudden heat of passion, however. First is the requirement that the jury view the situation subjectively from the defendant's point of view. *Holland*, 114 S.W.3d at 807 (quoting *Spears v. Commonwealth*, 30 S.W.3d 152, 154–55 (Ky. 2000)) (internal quotation marks omitted). As noted above, the statute requires that the reasonableness of the explanation or excuse for the emotional disturbance "be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." KRS 507.020(1)(a).

6

Second, extreme emotional disturbance "is not restricted to circumstances which would constitute provocation 'in the ordinary meaning of the term.'" *Holland*, 114 S.W.3d at 806 (quoting *Spears*, 30 S.W.3d at 154–55) (internal quotation marks omitted). Rather, "it is possible for *any event, or even words*, to arouse extreme mental or emotional disturbance." *Id.* (quoting *Spears*, 30 S.W.3d at 154–55) (internal quotation marks omitted). As long as the extreme emotional disturbance is sudden and uninterrupted, "[n]o definite time frame between the triggering event and the killing is required." *Id.* at 807 (quoting *Spears*, 30 S.W.3d at 155). However, it is important to remember that there must be evidence of more than just mere hurt or anger. *Talbott v. Commonwealth*, 968 S.W.2d 76, 85 (Ky. 1998) (citation omitted).

In the present case, Williams argues that the trial court erred by failing to consider the distinctions between extreme emotional disturbance and heat of passion. More specifically, he contends that the trial court erred by failing to consider that any event could be the triggering event regardless of timing. He also argues that the trial court erred by considering the reasonableness of his extreme emotional disturbance from an objective viewpoint.

In considering these arguments, we are mindful that a request for an extreme emotional disturbance instruction "must be supported by *some* definite, non-speculative evidence." *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky. 2010) (citations omitted). We have previously explained,

> Specifically, the evidence must show that some triggering event caused the defendant to suffer "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment,

7

and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes."

*Id.* (quoting *Greene v. Commonwealth*, 197 S.W.3d 76, 81 (Ky. 2006)). For example, the defendant may testify at trial as to his state of mind at the time of the killing. However, it is not necessary that a defendant testify at trial in order to introduce evidence sufficient to necessitate the giving of an EED instruction. In some cases, the defendant's statements to police have been introduced to demonstrate the defendant's state of mind. *See, e.g., Lasure v. Commonwealth*, 390 S.W.3d 139, 143 (Ky. 2012); *Hudson v. Commonwealth*, 979 S.W.2d 106, 108 (Ky. 1998). In other cases in which the defendant declined to testify, we have held that a psychologist may provide testimony about the defendant's state of mind, provided that the expert's opinion was not based primarily on the defendant's out-of-court statements. *Talbott*, 968 S.W.2d at 85. Regardless of how the evidence is introduced, there must be *some* factual basis to support the request for an extreme emotional disturbance instruction. Accordingly, absent definitive and unspeculative proof of an extreme level of emotional disturbance, a defendant is not entitled to such an instruction.

Furthermore, there must be evidence of more than just mere hurt or anger. *Id.* at 85 (citation omitted). For example, in *Bray v. Commonwealth*, 68 S.W.3d 375 (Ky. 2002), the defendant introduced a letter that his wife had written him, in which it was suggested that the wife was going to file an amended divorce petition. The witness who discussed the letter stated that "anyone would've been [upset] in this situation." *Id.* at 383. However, there was

no evidence that the defendant had experienced a severe emotional response. *Id.* Thus, the trial court had not erred in denying Bray's request for an extreme emotional disturbance instruction.

In this case, no definitive or non-speculative proof was offered that Williams "suffered a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from an impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan*, 715 S.W.2d at 468–69. Williams did not testify. The two adult eyewitnesses to the shooting, Camp and Cheatham, did testify, but they provided little insight into Williams's state of mind. For example, when asked what Williams did when Mangrum threw his cell phone, Camp responded simply that "he came around and shot her and took off running." The Commonwealth asked, "He walked right up and shot her?" and Camp responded "yes." Other than this limited testimony, Camp does not discuss, nor was she asked about, Williams's emotional reaction to the destruction of his cell phone or his state of mind at the time of the shooting.

Cheatham, on the other hand, contended that he could not remember the shooting. However, portions of his interview with police were read during trial in an attempt to refresh Cheatham's memory.[2] In the interview, Cheatham explained that Williams had walked up to the car and put his hand in the

---

[2] These statements were utilized in an attempt to refresh Cheatham's recollection; they were not admitted as substantive evidence. Nevertheless, the jury heard these statements, so we cannot disregard them. Cheatham stated at trial that he did not remember making any of these statements to police.

window, but neither Williams nor Mangrum said anything, and then Williams shot Mangrum. Accordingly, the portions of his interview read during trial do not provide sufficient insight into Williams's state of mind to demonstrate that Williams suffered from an extreme emotional disturbance at the time of the shooting.

We acknowledge that the fight between Williams and Mangrum appears to have been a violent physical altercation. For example, Camp testified that the two had their fists balled up when hitting each other. The evidence also demonstrated that Williams underwent a "head-to-toe" forensic examination on June 13, 2016, and that he had multiple abrasions on his upper body and head and a human bite mark on his chest. However, while we recognize that most people will become hurt or upset after a physical fight and the destruction of their cell phone, the record contains no definitive and non-speculative evidence that Williams suffered from a severe emotional reaction. As our case law makes clear, an extreme emotional disturbance instruction cannot be premised on mere speculation as to the defendant's state of mind, and there must be evidence that the defendant suffered from more than mere hurt or anger.

In sum, no definitive, non-speculative evidence was presented at trial to suggest that Williams was acting under the influence of extreme emotional disturbance, or that any circumstances existed at the time of the shooting to provoke such a severe emotional disturbance. A trial court "has no duty to instruct on a theory not supported by the evidence." *Tunstull*, 337 S.W.3d at

10

583 (citing *Payne v. Commonwealth*, 656 S.W.2d 719, 721 (Ky. 1983)). Accordingly, based on the evidence presented at trial, we cannot hold that the trial court abused its discretion in denying Williams's request to use an extreme emotional disturbance jury instruction.

## III.  CONCLUSION

For the reasons set forth above, we hereby affirm the judgment of the Jefferson Circuit Court.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Yvette Rene DeLaGuardia
Assistant Appellate Public Defender
Louisville Metro Public Defender's Office

Joshua Michael Reho
Leo Gerard Smith
Louisville Metro Public Defender's Office

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General

# Supreme Court of Kentucky

## 2019-SC-0288

ANTWOIN WILLIAMS        APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT

V.      HONORABLE ANGELA MCCORMICK BISIG, JUDGE

NOS. 16-CR-001681; 16-CR-003365; AND 18-CR-002503

COMMONWEALTH OF KENTUCKY        APPELLEE

## ORDER DENYING PETITION FOR REHEARING

The Petition for Rehearing, filed by the Appellant, of the Memorandum Opinion of the Court, rendered May 28, 2020, is DENIED.

All sitting. All concur.

ENTERED: August 20, 2020.

_____
CHIEF JUSTICE