RENDERED:  AUGUST 19, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0955-MR

JOHN TABOR                                                      APPELLANT

v.

APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NOS. 17-CR-00121 AND 17-CR-00178

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, LAMBERT, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  John Tabor appeals from an order of the Franklin

Circuit Court which denied his Kentucky Rules of Criminal Procedure (RCr) 11.42

motion in which he raised multiple allegations of ineffective assistance of counsel.

We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

On March 20, 2017, Appellant shot and killed Denton Bixler. At the time, Mr. Bixler was engaged in an argument with his girlfriend, who was also Appellant's daughter. Appellant claimed that he shot Mr. Bixler accidentally. Following a three-day trial, Appellant was convicted on murder[1] and wanton endangerment in the first degree.[2] Appellant was then sentenced to twenty years in prison. His conviction was affirmed by the Kentucky Supreme Court. *Tabor v. Commonwealth*, No. 2019-SC-000233-MR, 2020 WL 2091866 (Ky. Apr. 30, 2020). On April 28, 2021, Appellant filed the underlying RCr 11.42 motion seeking to vacate his conviction. The trial court denied the motion without holding a hearing. This appeal followed.

## ANALYSIS

To prevail on a claim of ineffective assistance of counsel, Appellant must show two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so

---

[1] Kentucky Revised Statutes (KRS) 507.020.

[2] KRS 508.060.

serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.*

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Id.* at 691-92, 104 S. Ct. at 2066-67 (citations omitted). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Additionally, "a hearing is required only if there is an issue of fact which cannot be determined on the face of the record." *Stanford v. Commonwealth*, 854 S.W.2d 742, 743-44 (Ky. 1993).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant

to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (citations omitted).

Where the trial court does not hold an evidentiary hearing on an RCr 11.42 motion, appellate review is limited to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." An evidentiary hearing is only required "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record."

*Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (citations omitted).

Appellant's first argument on appeal is that his trial counsel was ineffective for failing to present an extreme emotional disturbance (EED) defense.

He claims that his counsel did not have his mental health evaluated by a medical professional and did not hire an expert to testify at trial regarding EED. The trial court held that counsel did put forth an EED defense by having Appellant testify as to his relationship with Mr. Bixler and Appellant's belief that his daughter was being abused by Mr. Bixler. Furthermore, defense counsel had Appellant evaluated by the Kentucky Correctional Psychiatric Center and Appellant testified at trial regarding his anxiety disorder. Finally, the jury was given an EED instruction.

We agree with the conclusion of the trial court. EED is "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky. 2000), *as amended* (Jan. 24, 2001) (citation omitted). Here, Appellant testified about the circumstances of the shooting and explained his fear of Mr. Bixler. "[T]he test for effectiveness is not whether counsel could have done more, but rather whether counsel's errors undermined the reliability of the trial." *Baze v. Commonwealth*, 23 S.W.3d 619, 625 (Ky. 2000), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009) (citations omitted). Could an expert witness have bolstered Appellant's testimony regarding his emotional state at the time of the

shooting?  Maybe.  Was trial counsel's failure to hire an expert so inexcusable as to undermine the fairness of the trial?  No.  Counsel provided Appellant with a reasonable EED defense.

Appellant's next argument on appeal is that his trial counsel was ineffective for failing to object to improper Kentucky Rules of Evidence (KRE) 404(b) evidence.  KRE 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Prior to trial, the Commonwealth filed a KRE 404(b) notice regarding two incidents that it intended to introduce at trial.  First, approximately two years prior to the altercation, Appellant stated to Constable Richard Sandifer that he would kill Mr. Bixler.  Appellant was lamenting the fact that he believed Mr. Bixler was abusing his daughter and that he could not get the police to intervene.  The second incident was that sometime prior to the altercation, Appellant threatened Mr. Bixler with a gun.

Appellant argues that these prior bad acts, which were testified to at trial, were inadmissible and counsel was ineffective for failing to object. The trial court held that these two prior bad acts were admissible; therefore, trial counsel had no duty to object. We agree. These prior acts were relevant to show the tense relationship between Appellant and Mr. Bixler and were used to show motive and intent. As evidence of these prior acts was admissible under KRE 404(b), trial counsel had no duty to object. Appellant also claims that his appellate counsel was ineffective for failing to raise this issue on direct appeal. Again, because evidence of these prior acts was admissible, appellate counsel was not ineffective for failing to raise the issue on appeal.

Appellant's final argument on appeal is that his trial counsel was ineffective for failing to object to instances of prosecutorial misconduct. "Prosecutorial misconduct is a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Murphy v. Commonwealth*, 509 S.W.3d 34, 49 (Ky. 2017) (internal quotation marks and citation omitted).

> We employ a four-part test to determine whether a prosecutor's improper comments amount to flagrant misconduct. The four factors to be considered are: (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*Id.* at 54.

Appellant claims that on three occasions, the prosecution made inappropriate remarks that prejudiced the jury against Appellant. First, Appellant and his daughter are white and Mr. Bixler is black. During *voir dire*, the prosecution asked if the victim "got what he deserved" because he was a black man dating a white woman. Then, during opening statements, the prosecution asked, "what is your appropriate response as representatives of the community to a man who shoots with the intent to kill, and does kill another man simply because he disagrees with the man's relationship with his daughter." Finally, also during opening statements, the prosecution stated that "[w]e'll trust on you good people and your good judgment to make that decision."

We find no error. As to the *voir dire* statement, Appellant claims that this was an attempt by the Commonwealth to make race a focus of the trial. We believe the question asked by the Commonwealth was appropriate. The relationship at the center of this case was interracial and evidence was deduced at trial that Appellant shouted a racial slur at Mr. Bixler prior to the shooting. Race was a relevant issue in this case and was properly explored during *voir dire*. In fact, this line of questioning led to the dismissal of a potential jury member because he stated that he did not approve of interracial relationships. This was not

an inappropriate line of questioning during *voir dire*; therefore, trial counsel did not need to object to it.

As to the statement about Appellant shooting Mr. Bixler because he disagreed with the relationship between the victim and Appellant's daughter, this could be construed as either a statement regarding Appellant's belief that his daughter should not be dating a black man or that Appellant did not like Mr. Bixler because he believed the man to be abusing his daughter. Regardless of the way it was construed by the jury, the statement was appropriate. As previously mentioned, testimony at trial indicated Appellant made a racially inappropriate remark prior to shooting Mr. Bixler; therefore, it could be inferred that he had a problem with Appellant's race. In addition, the evidence presented at trial made it clear that Appellant hated Mr. Bixler because he believed Mr. Bixler was abusing his daughter. In other words, the evidence at trial overwhelmingly showed that Appellant did not like the relationship between Mr. Bixler and his daughter. As this was an appropriate statement, defense counsel had no duty to object to it.

The final statement made by the prosecution, that "[w]e'll trust on you good people and your good judgment to make that decision[,]" was also appropriate. Appellant claims this was an improper "send a message" argument. We disagree. The courts of this Commonwealth generally disapprove of the "send a message" argument because "[a]ny effort by the prosecutor in his . . . argument

to shame jurors or attempt to put community pressure on jurors' decisions is strictly prohibited." *Cantrell v. Commonwealth*, 288 S.W.3d 291, 299 (Ky. 2009). The statement at hand was not a "send a message" argument. It was merely the prosecution stating that it will trust the judgment of the jury. This was not prosecutorial misconduct; therefore, there was no need for defense counsel to object to it.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court. Appellant was not entitled to a RCr 11.42 hearing because the arguments raised in his motion could conclusively be dealt with by the record as it was. Also, the trial court did not err in denying Appellant's motion because defense counsel's actions at trial did not constitute ineffective assistance of counsel.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Ryan Chailland
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky