# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 20, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0431-MR

ISAIAH M. NELSON                                                APPELLANT


|       | ON APPEAL FROM JEFFERSON CIRCUIT COURT |
|-------|----------------------------------------|
| V.    | HONORABLE ERIC JOSEPH HANER, JUDGE     |
|       | NO. 19-CR-001390                       |


COMMONWEALTH OF KENTUCKY                                         APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Isaiah Nelson appeals as a matter of right[1] from the judgment of the

Jefferson Circuit Court finding him guilty of murder, wanton endangerment in

the second-degree, and assault in the fourth-degree, and sentencing him to

thirty-years' imprisonment.  Nelson argues that the trial court erred in (1)

failing to give his proposed extreme emotional disturbance instruction; and (2)

giving the Commonwealth's tendered provocation qualification instruction to

the jury.  This Court affirms the circuit court's judgment.

## I.      Factual and Procedural Background.

In early May 2019, Nelson and his girlfriend, Cydney Jacobs, lived in a

camping trailer on property owned by Nelson's grandfather, Terry Alexander.

---

[1] Ky. Const. § 110(2)(b).

The trailer was located behind Alexander's home.  The couple had lived at the trailer since the previous December, though Jacobs testified she had left Nelson multiple times during that period.

On May 3, 2019, Jacobs arrived at a parking lot across the street from Alexander's home with Justice Smith, her child's father.  Jacobs intended to gather some of her personal property from the trailer and leave Nelson.  Although Jacobs told Smith to leave, Smith remained in his car at the far end of the parking lot while Jacobs walked up to the trailer.

Jacobs entered the trailer and told Nelson she was leaving him.  Nelson then became confused and upset, asking her where she had been and how she had gotten home.  Jacobs told him "[i]t doesn't matter."  Nelson testified that he was concerned about who Jacobs had brought to his home where he lived with his family.  Nelson then stormed outside.  Jacobs called Smith and told him, "I'll find my way back.  You can leave."  During this call Jacobs could hear a heated exchange taking place between Smith and Nelson.  Nelson then returned to the trailer and Jacobs testified that it "just turned into a whole scene."

Nelson testified that Jacobs was confrontational and that she tried to assault him while they renewed arguing.  Nelson punched Jacobs in the eye and placed her in a headlock until her vision blurred and Jacobs lost consciousness.

Nelson then left the trailer for a second time and began walking out of the house's front gate towards the parking lot.  Alexander met him at the front

2

of the property, and Nelson told Alexander, "she ain't gonna do me like that."

Nelson walked to the edge of the parking lot, one hundred fifty feet from

Smith's vehicle. Alexander stated to police later that day that Nelson then

made a hand gesture. Nelson told Smith to leave and, according to Nelson's

testimony, Smith responded, "I ain't goin' nowhere. You got me f****d up. I'll

smoke you right here!" Smith threw his hands up and ran at Nelson.[2] Nelson

swung back with a spring-loaded knife and struck Smith's neck. Smith then

fled to his car. After driving a short distance, Smith lost consciousness and

wrecked the car. He died at the hospital shortly thereafter.

At the close of proof during trial, Nelson requested an extreme emotional

disturbance instruction based upon his and Jacobs' testimony. The trial court

denied the requested instruction:

> I think [Nelson] did waffle a little bit on whether or not he was
> angry during the camper incident. . . . [Nelson] presented like he
> was the one in control and she was out of control.

> [T]he court certainly did not perceive that he was in a state of mind
> that was so enraged, inflamed, or disturbed as to overcome one's
> judgment as to cause one to act uncontrollably. In fact, [Nelson]
> was accurately able to perceive that [Smith] was coming, that he
> was threatened, that he was able to see [Smith] reaching for the
> waistband. He was able to recall that [Jacobs] had told him that
> [Smith] had a gun. . . . So, I don't think there was sufficient
> evidence introduced at trial to support [extreme emotional
> disturbance] being in the instructions.

---

[2] Nelson alleges that Smith was reaching towards his waist. Nelson testified that he was afraid Smith was going to kill him because he believed Smith was reaching for a gun, a weapon Jacobs had told him, several weeks before, that Smith had purchased. Alexander stated in his interview with police that day that Smith came at Nelson with his arms up. Nelson and Alexander were the only surviving witnesses to the confrontation.

Instead, the trial court gave jury instructions as to murder in the first degree, manslaughter in the second degree, and reckless homicide, all of which required the jury to find Nelson was not privileged to act in self-protection. The trial court's self-protection instruction included a provocation qualification as provided in KRS[3] 503.060(2), per the Commonwealth's recommendation and over Nelson's objection.

> In adopting the provocation qualification, the trial court stated:
>
> In this situation, namely because the evidence was he . . . took it upon himself to go back out a second time. Now, he testifies that the reason he went out there was to tell [Smith] to go away. . . . But, he was clearly armed at the time.
>
> [Nelson] waved [Smith] to come at him, therefore, bringing [Smith] to [Nelson] for the altercation to take place. And, so I think that's sufficient evidence . . . of provocation[.]

The jury rejected Nelson's self-protection defense—Nelson's leading theory of the case—and returned a guilty verdict of murder, wanton endangerment in the second-degree, and assault in the fourth-degree, and recommended a sentence of thirty years' imprisonment. The trial court sentenced Nelson accordingly, and Nelson appeals to this Court as a matter of right. The issues in this case are preserved. RCr[4] 9.54(2).

## II.    Standard of Review.

This Court reviews a trial court's decision to give or decline to give jury instructions for abuse of discretion. *Downs v. Commonwealth*, 620 S.W.3d 604, 613 (Ky. 2020). This deference to the trial court's decisions regarding

---

[3] Kentucky Revised Statutes.

[4] Kentucky Rules of Criminal Procedure.

4

instructions arises from the "complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial from the bench in the courtroom." *Id.* (quoting *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015)). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 613. The substantive content of the jury instructions is reviewed de novo. *Hargroves v. Commonwealth*, 615 S.W.3d 1, 6 (Ky. 2021) (citing *Sargent*, 467 S.W.3d at 204). In addition, the trial court has "a duty to instruct the jury on the whole law of the case." *Daniel v. Commonwealth*, 607 S.W.3d 626, 644 (Ky. 2020).

### III.  Analysis.

#### A. *Extreme Emotional Disturbance.*

Nelson claims the trial court improperly denied his request for an extreme emotional disturbance instruction, arguing that the evidence was sufficient to warrant such an instruction and that its denial violated "his right to due process of law[.]"

"Under proper facts, [extreme emotional disturbance] reduces murder, a capital offense under Kentucky Revised Statutes 507.020, to first degree manslaughter, a Class B felony under KRS 507.030(1)(b)." *Hargroves*, 615 S.W.3d at 6. The party seeking an extreme emotional disturbance instruction bears the burden to show an occurrence so dramatic that it renders the mind temporarily uncontrollable and provokes an "explosion of violence." *Id.* at 7 (quoting *Luna v. Commonwealth*, 460 S.W.3d 851, 883 (Ky. 2015)).

5

While "[t]rial courts have a duty to instruct the jury on the whole law . . . that duty does not extend to placing speculative theories before the jury merely because the testimony includes some basis for speculation." *Daniel*, 607 S.W.3d at 644 (citing *Lackey v. Commonwealth*, 468 S.W.3d 348, 355 (Ky. 2015)). An extreme emotional disturbance instruction "'must be supported by some definite, non-speculative evidence.'[5] The evidence must show . . . an identifiable triggering event[6] which caused the defendant to 'suffer a temporary state of mind so enraged, inflamed, or disturbed as to overcome [the defendant's] judgment[.]'" *Id.* 607 S.W.3d at 644 (quoting *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky. 2010)). This triggering event need not have emanated from the victim, and it may arise from "the 'cumulative impact of a series of related events.'" *Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005) (quoting *Holland v. Commonwealth*, 114 S.W.3d 792, 807 (Ky. 2003); *Fields v. Commonwealth*, 44 S.W.3d 355, 359 (Ky. 2001)). However, the disturbance must be "sudden and uninterrupted[.]" *Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky. 2000) (quoting *Foster v. Commonwealth*, 827 S.W.2d 670, 678 (Ky. 1992)) (internal quotation marks omitted).

The trial court did not abuse its discretion in denying Nelson's proffered instruction because the proof adduced that his anger was equivocal. While Jacobs testified that Nelson was "very upset and mad" when she first came into

---

[5] *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky. 2010).
[6] *Driver v. Commonwealth*, 361 S.W.3d 877, 888 (Ky. 2012).

6

the trailer, mere "hurt" or "anger" is insufficient to warrant an extreme emotional disturbance instruction. *Talbott v. Commonwealth*, 968 S.W.2d 76, 84-85 (Ky. 1998). In his testimony, Nelson equivocated on cross-examination by denying that he was angry and doubled back to say, "emotions [were] going through me, so I wouldn't say that I was calm."

Further, Nelson's state of mind was not inspired by a clear triggering event, was not "sudden and uninterrupted," and did not culminate in an "explosion of violence." *Spears*, 30 S.W.3d at 155 (quoting *Foster*, 827 S.W.2d at 678 (Ky. 1992)); *Hargroves*, 615 S.W.3d at 7 (citing *Luna*, 460 S.W.3d at 883). Furthermore, May 3, 2019, was not the first time Jacobs had left Nelson in the recent past; her announcement to the same effect on May 3, then, could not have been an extraordinary surprise. This testimony diminishes the possibility that Jacobs' arrival at the trailer was a triggering event.

Rather than explosive violence, Nelson's leading theory of the case was one of self-protection, as demonstrated by his counsel's opening statement:

> This is a case about Isaiah Nelson, about his fear of what Justice Smith intended to do to him on May the 3rd of 2019. It's a case about self-defense.

In line with this theory, when Nelson testified at trial, his account represented a wary knowledge of the unfolding situation with which he was confronted. Nelson presented his altercation with Jacobs as one in which he was trying to evade her, and that when this failed, he resorted to choking Jacobs to subdue her. When Nelson went outside for the second time, he capably interacted with his grandfather to tell him that "she ain't gonna do me like that." Finally,

7

during the fatal incident, Nelson testified that he reached for his spring-loaded knife in self-defense because Jacobs had told him, well before the events of that day, that Smith had purchased a firearm. The sum of this testimony, when viewed in the light most favorable to Nelson, still indicates a state of mind that retained judgment, memory, and awareness of the situation.

The facts in this case are analogous to those in *Luna*, in which the defendant had an altercation with his roommate after they had lived together for several months. In that case, the defendant's testimony "may have supported a self-defense theory, but it certainly did not support extreme emotional disturbance[.]" 460 S.W.3d at 883. While the defendant and his roommate grappled over a firearm, the defendant testified that all he could think of was being absent from his children's lives. *Id.* at 883-84. We reasoned that, "[i]f anything, he had complete control over his judgment as he notes all he could think of was dying and his children growing up fatherless." *Id.* Much like in *Luna*, Nelson here testified that when he discovered another person's presence near his grandfather's property, he was primarily concerned with his family's safety. This evidence contradicts Nelson's assertion that he was so overwhelmed with emotion that it overcame his judgment.

While Nelson is correct that the evidentiary bar to warrant a jury instruction is low, the trial court did not abuse its discretion in rejecting Nelson's proposed extreme emotional disturbance instruction.

8

### B. Provocation Qualification to Self-Protection.

Nelson claims the trial court erred in giving the Commonwealth's suggested provocation qualification instruction to the jury. In determining whether a qualification to a self-protection instruction is proper, the trial court must consider the circumstances surrounding the incident as a whole. *Stepp v. Commonwealth*, 608 S.W.2d 371, 374 (Ky. 1980). The trial court must also "find as a matter of law that there is sufficient evidence to justify such limitations before instructing the jury." *Downs*, 620 S.W.3d at 614 (quoting *Stepp*, 608 S.W.2d at 374).

A defendant is not entitled to act in self-protection when, "[t]he defendant, with the intention of causing death or serious physical injury to the other person, provokes the use of physical force by such other person[.]" KRS 503.060(2). This court has interpreted this statute to contain two elements: "(1) 'the defendant must have the intention of causing death or serious physical injury to the victim; and (2) the defendant must actually provoke the victim to use physical force.'" *Barker v. Commonwealth*, 477 S.W.3d 583, 587 (Ky. 2015) (quoting *Barker v. Commonwealth*, 341 S.W.3d 112, 114 (Ky. 2011)). A "provocation instruction should be reserved for situations where the Commonwealth can show the defendant intended to kill the victim all along and essentially baited the victim to use force first so he could claim self-protection." *Id.* at 588.

In *Barker*, the defendant arrived at a mistaken rival's apartment carrying a knife and a loaded firearm. *Id.* at 586. While attempting to covertly slash his

9

rival's tires, the rival's roommate walked by and told the defendant that he was slashing tires on the wrong car. *Id.* The defendant began to walk away, but the rival and his roommate reappeared outside, and an altercation ensued which ended in the rival's death. *Id.* This Court reversed the defendant's conviction because the trial court's provocation qualification "was not supported by the evidence." *Id.* at 585. We reasoned that the defendant's attempt to *covertly* slash his rival's tires "was not a confrontational provocation, such as the instruction anticipates." *Id.* at 587 (quoting *Barker*, 341 S.W.3d at 114). "The mere intent to make someone angry out of revenge, in and of itself, is insufficient to warrant a provocation-qualification instruction." *Id.* at 588.

In this case, however, the trial court did not abuse its discretion in tendering a provocation qualification instruction to the jury. Alexander's statement to the police, taken within hours of May 3 events, indicated that Nelson walked off Alexander's property and made a waving hand motion towards Smith. When Nelson did so, it was his second time leaving the trailer and interacting with Smith—the two had already traded a heated exchange— and Nelson was armed with a spring-loaded knife. These facts certainly suggest a more confrontational engagement with the victim than occurred in *Barker.*

Nelson's decision to leave the trailer a second time while armed, with knowledge that Smith remained in the parking lot across the street, along with his decision to walk up to that parking lot, were sufficient evidence for the trial court to determine a reasonable jury could find an intent to kill or cause

10

serious injury all along. In addition to the aforementioned facts, Alexander's testimony that Nelson waved his arm towards Smith likewise constituted sufficient evidence for a reasonable jury to find that Nelson provoked Smith. While Smith ignored requests to leave from both Nelson and Jacobs, Smith had no duty to leave a public parking lot and was first approached by Nelson in that same parking lot.

Both the first and second elements of the *Barker* test were met. The trial court did not, therefore, abuse its discretion in tendering a provocation qualification instruction to the jury.

### IV. Conclusion.

For the foregoing reasons, we affirm the Jefferson Circuit Court's judgment in all respects.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Yvette De La Guardia

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General

11